Richard Cotromano et al. v. RTX Corporation, DBA, Pratt & Whitney Ms. Hatfield, I see you've reserved five minutes for rebuttal. Is that correct? Yes, Your Honor. Thank you. You may begin when you're ready. May it please the Court, I'm Mara Hatfield. I have the pleasure of attending today with Jack Spirola. We represent 11 victims of a cancer cluster that occurred in western Long Beach County. Those cases were consolidated under the case of Elizabeth Cotromano. Elizabeth Cotromano was six months old when she was diagnosed with a very rare optic glioma. She was more than six years old when that cancer was confirmed by the CDC to be one of an escalated increased incidence of glioma brain cancer in her county. At no time prior to that date, prior to six years later than her diagnosis, could Elizabeth or any of her fellow victims have been aware that their rights were assaulted by the defendant's contamination and that their cancer resulted from that insult to their rights. Can I ask you a quick question about that? And you might just correct my misunderstanding of the larger record of these cases. But didn't one of the plaintiffs, even in this appeal, file in 2011? Yes. But you said couldn't possibly have known of Pratt & Whitney's involvement until 2013. I'm sorry. I misspoke. Thank you. Maybe you didn't. Maybe I misheard. So six years later was 2010. They filed their case within three years of that in 2013. So I misspoke. Thank you for correcting me. And thank you for your attention to the record. And 2010 was when the state of Florida identified the cancer cluster. Is that right? 2009 is when the cancer cluster began being investigated in August of 2009. So nearly six years. Elizabeth Cochumano was born in November. And she turned six in that November. The cluster was confirmed in 2010 by the Department of Health and by the CDC at such a startling number that it is less than 1% likely that this cluster arose by chance. In other words, as of March 2010, this area, these victims were on notice that someone had likely violated their rights. That does not mean that they knew who. But by 2010, they knew that someone had. By 2009, they knew that it was a possibility. All of these cases were filed within four years of knowing that possibility, but not yet within four years of knowing. Four years from 2010? They even filed within four years of 2009. We would argue, though, that this cause of action actually occurs in 2010 when the CDC cluster was confirmed. How did the cancer cluster investigation in 2009 begin? Was it the state of Florida who began the investigation or the CDC? So two of the victims whose cases are before your honor, Ms. DiCarlo and Ms. Newfield, their parents, I'm sorry, Ms. DiCarlo and Mr. Dunsford, their parents were getting surgery for their children at Miami Children's Hospital in late 2008. They had both just been told by their doctors that it's nobody's fault. Cancer just happens. This is random. And yet, they're in the waiting room sitting next to each other, and they realize they are neighbors. And then they get home, and they start getting on the phone, and they find other neighbors, and they ask the Department of Health to begin an inquiry. The Department of Health released a report in 2009 saying we are beginning that inquiry. Department of Health for the state of Florida? For the state of Florida. At no time, and this is undisputed, should anybody have questioned whether their cancer was the result of a tortious act of another until at the very earliest, August 2009. That is undisputed. And it is unconstitutional to deprive a person of their right to seek redress for that violation of their rights in a court of law. We don't even have to get to the constitutional analysis here because Florida provides three ways of looking at the date of accrual for this cause of action in the environmental context. Can I ask you just one quick blocking and tackling question? This Price-Anderson thing is kind of a weird animal, right? It sort of makes state claims, federal claims, and then says look to state law, right? So there's this boomerang effect. But so, for instance, in Section 1983 cases where we likewise borrow state statutes of limitation, I think I've got this right. The accrual rule remains a matter of federal law. But in this case, it seems like everyone agrees that not only are we borrowing in effect a state statute of limitations, but we're also using state accrual rules. Do you agree with that? I would agree that that is the way that this case has been argued. I think that the distinction is practically irrelevant because the cases, and one of those cases is one that we've cited for the court today. I believe it was Uri. One of those cases noted that typically when you have diversity actions, for example, as well, the statute of limitations comes from the state, but the date of accrual analysis comes from the federal law. And here in the environmental context, that is the same analysis regardless. Because Uri, because of all the cases that follow Uri, are cited by the Florida Supreme Court in Pulsiman and in Diamond, which is cited by the court. All of those cases stand for the same thing, which is when you have a creeping latent disease, it would be unconstitutional to deprive the victim of that latent disease their right to bring an action any earlier than when they knew about the connection between the source of that latent disease. I think that the question for Judge Newsom is if we were writing an opinion, is it correct, because I know that the parties seem to be arguing or there's agreement that the Florida accrual rule applies, but the question is should it really be the federal rule that applies? It may not make a difference, but it does make a difference for purposes of a written opinion. I would say given, and I wish I had the case in front of me, and I will look for it during the break. Given that case, it does appear that the federal accrual rules should apply. However, as Judge Newsom pointed out, Price-Anderson is a moving target. You rely on the state's substantive rules, and then what you do is you use the state's most akin cause of action to define the cause of action. It's not like a 1983 cause of action where there is a cause of action. Here we're using the state's cause of action to figure out what's the most analogous. We've argued that the most analogous cause of action are really two things, none of which the court used. One is negligence claims for a products liability case. It has been submitted in the briefs that we did not allege a products claim. That is not true. If you look at the way that products liability is defined in the court statutes, Judge Marra went to the comparative fault statute 768-81. It's the only place where products liability is defined to say that products liability claim can't be defined by the nominal title alone. What 768-81 goes on to do is say a products liability claim is any claim for personal injury arising out of the fabrication, design, formulation, construction, installation, preparation, or assembly of a product. We are suing Pratt & Whitney for the waste products that come from their design, their assembly, their fabrication of jet engines, and in this case a nuclear jet engine. We do allege a products liability regardless of the fact that there's no title products liability because it's a pricey understanding claim. In that instance, we do have to look at the state cause of action to determine what is the accrual rule. Then I feel like we're starting to split hairs once we look at, well, now do we look at the federal law to determine are we looking at how that cause of action accrues or state law? Well, so the reason I ask the question is that at least as I understand Florida law, it says, you know, I'm sure there are a bunch of cases. The one I've got in my notes is Larson & Larson. It says the cause of action accrues when the statute begins to run at the time the injury was first inflicted, not from the time the full extent of the damage is sustained has been ascertained. So if the accrual date is the infliction of the injury, then the analysis sort of shifts for you here. And I understand you've got ways kind of out of that. Florida's got this statute that provides an effect for sort of pegging it to causation for certain types of claims. And is that where you're going to kind of try to say we're in the product liability silo of that statute? Yes, Your Honor, we're in the product liability silo of that statute. We are also under 376.313, which is the statutory cause of action that is most in your price understanding. You take the regulatory standards as your standard of care. For those, 376.313, Florida Supreme Court and other courts have said the only defenses are those listed in 373.308, 373.308, not statute of limitations, or the continuing trespass doctrine, which the defendant has said that we waived and we did not. So those are the three silos, if you will, that we believe determines accrual. But I thought you were arguing, aside from products liability, that you can't have all of the elements of the cause of action present until you know the causation. So, in other words, the fact that you have an injury but you have no idea who inflicted the injury, you can't have a cause of action accrue because who would you sue? What would you sue for? And my question to you is, is that only the case in the products liability area or is that just a general rule of accrual that has to be the case? It's a general rule of accrual that has to be a case. We cited for the court both federal and Florida jurisprudence going all the way back to the PCV case with Florida Power and Light. You have to know about vindication. You have to know about the violation of your rights. In this instance, how does Florida address that? How does Florida say, okay, well, in order to know about your violation of rights in the environmental context, they use continuing tort or continuing trespass. Under 376.313, which is pollution, there is no statute of limitations defense. Under products liability, it's the manifestation doctrine. And the court is clearly trying to use the manifestation doctrine because he uses the diagnosis date. And the only time the diagnosis date comes up, rather than the infliction of the harm date, which would be draconian here because nobody even knew that there was radioactive material around, the only time the diagnosis date comes up is in the manifestation doctrine. So what we have is an order that half used the manifestation doctrine and then said that the manifestation doctrine does not apply. And in cases like Larson, the issue is when the injury comes later, not when the knowledge of causation comes later. Is that right? Exactly, Your Honor. Larson v. Larson is a professional negligence case, and the court used that to say there is no discovery rule. Larson v. Larson is looking at a date of accrual that is a discovery rule. Professional negligence under 95-11-2 at the time, I believe it's been changed, was a two-year statute of limits that begins to run as they knew or should have known about essentially the bad advice in that case. The issue in Larson v. Larson was, can you wait until your damages are big enough to sue upon? It's totally irrelevant. And it shows the kaleidoscope of errors that are present in this order. To use Larson v. Larson to say that there is no discovery date when Larson v. Larson is looking at an accrual date that is expressly a discovery date shows how this just became far more complicated than it needs to be. We would request that the court reverse, allow these 11 victims to have their day in court to continue on the merits of the claims that they did not know or could not know were even possible until 2010. Can I ask just two follow-up questions? Absolutely. One, I understand the intuitive appeal of a general rule that you have to know not only that you were injured but who caused your injury. But what then do we make of this specific Florida statute that seems to provide a discovery rule only for certain kinds of actions, which is, I think, the genesis of your insistence that your claim is, in fact, a product liability claim because you want to be within that statute. But what is that statute really doing if, in fact, there's sort of a discovery rule for all causes of action? So it's interesting to see how that statute developed. That statute developed because the Florida Supreme Court said it would be unconstitutional to have a statute of limitations and an accrual date in a creeping illness case where a person doesn't know of the connection between their disease and the product until the claim has already passed. The Florida legislature went and they created a— they codified, but it had already been existing, a discovery-based accrual date for both fraud and products liabilities together under 95031. Then there was existing further case law, and they split it apart. And they had to split it apart because the statute of repose was found to be unconstitutional by the Florida Supreme Court again because the statute of repose did not make an exception for the manifestation doctrine. Instead, even a statute of repose is unconstitutional if it does not allow for the discovery of the connection between the disease and the injury. So that exception evolved because of case law, which did not replace that case law because that case law was about our constitutional right to seek redress. And that constitutional provision cited by the Supreme Court has not changed. You do not have standing, and this is recognized even in some of the cases cited by the district court's order and the cases cited by the defendant and the cases that we've cited. You do not have standing until you have three things, an injury in fact, its relation to a harmful act, and the ability to make that injury certain. So fear of cancer is not necessarily an injury. You cannot have that second prong if you don't even know that you have been wronged. Now, if you know you've been wronged and someone's hiding it from you, there's an exception created for that. That's equitable estoppel. What we're arguing is not so much that you have to know who caused your harm, but at the very least, you have to know that your cancer was not some random fluke of your own DNA. It is not something that you should be suing Providence over. Because let's face it, if we don't give these victims the right to sue at least four years from when they know they have to start investigating who might have caused that pollution, you're asking them to sue Providence. Okay, so I've carried you beyond your time. I have one more, and you can be quick. What, if anything, do we do with this statement in our, I guess you pronounce it, Penaris decision? Florida law required the plaintiff to file her lawsuit within four years of her cancer diagnosis. Unfortunately, the only issue before the court in that case was whether we get the benefit of the federally required commencement date. And it is clear from this court's ruling and the prior ruling of, I believe it's the Eighth Circuit, that that does not apply. The FRCD does not apply because this is not a, quote, action based on state law, even though we have to look at state law. So your answer really is that, like, it's sort of sloppy language in the opinion, but the case was really about something else. Yes, and in two points in that case, and we cite them in our brief, the Eleventh Circuit noted state-afforded exceptions were argued below and are not argued here, so they are not before the court. Those are before the court now. Didn't the plaintiff in that case concede that the date would be the cancer diagnosis if their version of the law was correct? I thought that was not disputed in that case, but I may be wrong. No, the plaintiff in that case conceded that if one of these exceptions do not apply, and below there was more than just the FRCD, then the date would be the date of diagnosis. None of these plaintiffs have made that concession because, as pointed out in the case law in Rule 44, these cases are not merged. There was not even a defense for the statute of limitations at issue in these cases because the defendant had waived it when that motion was argued and when that admission was made for Santiago. Thank you. Ms. Hatfield, you are answering our questions, so we'll give you your full five minutes for rebuttal. Thank you. Mr. McNally. Thank you, Your Honors. And may it please the Court, Andrew McNally on behalf of Pratt & Whitney. This Court should affirm the District Court's summary judgment ruling, which rests on the straightforward application of Florida statute of limitations to plaintiffs' untimely price-handling MAC claims. I'd like to start by talking about the fundamental issue of the Florida operation of the statute of limitations. As the Florida Supreme Court explained in New Light Community Church, the subject matter of accrual is definitively stated in Florida Statute, Chapter 95, and it is a comprehensive statutory regime. Under that regime, there are only delayed discovery rules for certain statutorily identified claims. For all other claims, a plaintiff's claim accrues whether or not that plaintiff knew or should have known of the tortious conduct underlying their alleged injury. The Florida Supreme Court went further in New Light Community Church, making it clear that this is an issue of separation of powers, not simply statutory interpretation, that it is the authority of the Florida legislature to determine how claims accrue, and should they want to seek a different accrual rule, it is the exclusive power of the Florida legislature to do so. Well, Ms. Hadfield raises some compelling policy arguments. Those policy arguments do not belong within the four walls of this courthouse. Instead, they belong in Gainesville, in Tallahassee, in the legislative branches in the state of Florida because it is specifically their prerogative to determine whether an alternative accrual rule applies. Does that mean, as Judge Pryor questioned, that it is possible for someone's claim to expire before they knew or should have known of the facts of causation? And the answer, according to this Court, is yes. In the Ray v. Chemnova opinion, 336 F. 3rd, 1278, 2003, this Court applied Chapter 95 to definitively conclude that a plaintiff's wrongful death claim expired despite the fact that they were not aware of the facts and circumstances leading to the injury. Whether that rule is equitable or not from the plaintiff's perspective is a question that belongs exclusively to the Florida legislature. Will you tell me? I'm so sorry. I was writing something else down. Just tell me the name of the case you just mentioned about the wrongful death claim. Ray v. Chemnova. R-A-Y. R-A-I-E. R-A-I-E. v. Chemnova, C-H-E-M-I-N-O-V-A. Collin, tell him I spelled it correct. 336 F. 3rd, 1278, 2003, 11th Circuit, Your Honor. Thank you so much. The second question I would like to address is whether or not this question of accrual is a state issue or a federal issue is, as Judge Newsom correctly pointed out, the Price-Anderson Act is an unusual act. And what this court held in the Pinaris opinion is that the state law rules of decision are adopted into the Price-Anderson Act claim and expressly held that that included the rules of accrual. If you turn to that opinion at page 1262, it's not just an offhanded comment. Judge Marcus, I believe in that opinion, does a textualist analysis of the operation of the Price-Anderson Act. He notes that under certain provisions of the Price-Anderson Act, there is a discovery rule for something called Extraordinary Nuclear Occurrences, or ENOs. That's not at issue here. No one claims that it is at issue here. And goes on to comment, had Congress wanted to display state law, your Florida law, by imposing discovery tolling for public liability of actions, it knew how to say so, and it did elsewhere in the Price-Anderson Act itself. So it wasn't simply a matter of default. It was a matter of textualist interpretation of the Price-Anderson Act that is law of the case that the plaintiffs have not challenged here. Indeed, they don't challenge below in front of the district court, and they haven't challenged in front of this court the fact that Florida law governs the accrual of their claims. From there, Your Honor, I'd like to turn to address Ms. Hatfield's attempt to re-characterize her claim as sounding in products of liability. Before you go there, just let me clarify. So are you saying that in the case of exposure to hazardous materials, the date of diagnosis would always be the accrual date for the claim? I think the date of diagnosis is an accrual date. The question is, when do you know of an injury? And you can imagine different types of injuries. For instance, an exposure might lead to some mental distress because of a potential future concern, sort of a medical monitoring claim. I think that you would have a different accrual date there. I think what matters is- So if you knew of an exposure, but you didn't know of an injury until, say, five years later, would the date of diagnosis be the accrual date? It would be. Yeah, it would be the injury date. And you can see that very clearly under Larson and Larson. But what's the injury date? Is it when you know you've been exposed to something hazardous, or was it when you get a cancer diagnosis from it? I think it's when you've suffered the harm that you are seeking as the animating feature of your claim. So the cancer diagnosis in that example. It is the cancer diagnosis. But how do you- So you get the cancer diagnosis. You're at Miami Children's, and the doctor tells you that your child has cancer. But at that moment in time, you just think it's providence, right? You don't realize that it's as a result of an actual exposure to something that is not natural. So why shouldn't the accrual date be then when you learn that what caused the injury is not something that just happened naturally? Because the Florida legislature has determined that under Florida law, accrual comes with the last step in a cognizable action. All of the events, whether you know about them or not, leading to that tort have occurred by the time that you have that injury. And it is the Florida legislature's prerogative that in the balance of plaintiffs and defendants, they place the burden on the plaintiff in that situation to discover their claim. Whether this court would recognize a different policy as being a better approach is, frankly, outside of the jurisdiction of the court, as explained by the Florida Supreme Court in R.R. v. New Life Community Church. That's exclusively a question for the Florida legislature. And the Florida Supreme Court has expressed, they say there is no room for judicial alteration and expansion of the accrual rules. So I agree with you with respect to the delayed discovery rule, which is statutory and applies to product liability. But is there a difference between that and the manifestation doctrine? I see delayed discovery as having to do when you discover the injury later, whereas the manifestation doctrine has to do with when you know you were exposed. So the manifestation doctrine cases, exclusively and without exception, that the plaintiff cites, arise in the context of product liability claims. And they fall into two species of cases, and I'll address them separately. There's the Carter v. Brown and Williamson type cases from the Florida Supreme Court. Those are cases applying the Florida accrual rule for products liability cases to statutes of limitations, which is a special exception that does allow for the new or should have known for a products liability claim. That does not apply to general environmental torts. There's a second question that comes up in the product liability line of cases, which is when did you know you actually had an injury? So the creeping disease or the latent illness that Ms. Hatfield talks about. And I think it's an interesting, maybe academic question under Florida law of when exactly does cancer occur between exposure and diagnosis. But it's academic in this case because it's undisputed that by the date of diagnosis, they had a manifested injury. So in all cases, and it's undisputed matter of record, the diagnosis date is more than four years before... But can I ask you a question? This is the one thing I had a question about. There's 11 plaintiffs here. And did they not all have different dates where they learned that they had cancer? Yes, and for each one of them, the court did an analysis comparing the accrual date for that particular plaintiff to the date of that particular plaintiff's complaints. So how did they know in 2004 or 2005 when they were diagnosed with cancer that they'd been exposed to a hazardous substance? They may not have known at that time, but it is incumbent upon them under Florida law once they have that diagnosis to seek to discover whether there is a tort or not. And in fact... Just because they got a cancer diagnosis? Well, I think that is the operation of how Florida law works under that circumstance. And I would note that as a practical matter, that's exactly what most of these plaintiffs did. There's no Florida Supreme Court case that deals with an accrual date based on a mass tort, correct? I don't know of one offhand, Your Honor. I don't know of one offhand that is based on a mass tort. But I would return the court back to New Life Community Church, which says that there is a baseline accrual rule and there are exceptions where there is... I understand there's a baseline accrual rule, but let's say that I'm Plaintiff A and I have a cancer diagnosis in 2004 and then the neighbor two blocks down gets a cancer diagnosis in 2005 and then the next neighbor down gets a cancer diagnosis in 2007. And we have all the same cancer, which is unusual statistically. And that becomes known and there's a conversation from a neighbor who's like, oh my God, they have the same cancer. Now you may have an awareness that you may not have had before that maybe there is something there. But there's no case from the Florida Supreme Court that says that the date of accrual then begins... Because it's different. It's not just an individualized tort. It's a tort that now has a cluster. No, these are individual torts. The allegation from each plaintiff is a personal... I understand it's personal, but it also is a mass tort because it's a cancer that is a cluster. But each individual's claim, even in the context of a mass tort, accrues according to their circumstances. For instance, if you have a product liability case where thousands or tens of thousands of people are taking a medication. Zantac has been big in the 11th Circuit recently. Each plaintiff's claim is judged by their behavior. When did they take the pills? When did the statute of limitations run from their illness? It isn't based on the mass tort. I agree with you that those facts might make it more likely that you would sue. But that's just saying that those were facts that helped you know or should know. There's no way to read into the Florida statute a know or should know requirement for accrual without eviscerating Chapter 95. Can you maybe at some point... You've got three minutes, but pivot to her argument that this is in fact a product liability claim and thus benefits from 95-whatever? Sure. That argument is an 11th-hour change by the plaintiffs that's inconsistent with their complaint and a decade of admissions before the district court. So the heart of a product liability claim as explained by the Florida Court of Appeals in Lane v. International paper, which is 545 Southern 2nd, 484 at 486, is the allegation that the defendant was engaged in the business of and gained profit from the sale and distribution of a product through the chain of commerce that caused the plaintiff's injury. Nowhere in the plaintiff's complaints do they ever allege that Pratt & Whitney is engaged in commerce through the distribution of any product that they allege caused their injury. Their complaints sound exclusively a negligent remediation. Pratt & Whitney didn't properly oversee the transporters. Pratt & Whitney used an improper soil remediator. Something of that nature. But they are not alleging and have never alleged. And what's important, Your Honor, is in 70 pages of briefing before this court, the plaintiffs haven't identified a single allegation at any of their complaints that establishes those fundamental criteria. And it goes beyond that. For 10 years, they've acknowledged these cases are not product liability cases. Every one of these plaintiffs files a docket sheet listing the claims. They did it in 2013 and 2014. They checked negligence, environmental torts. Not one checked product liability. When we brought statute of limitations in the Santiago case, never once did they argue that the identical claims were product liability claims. When we sought to add the statute of limitations as an unpled affirmative defense under Grant, plaintiffs argued they were prejudiced precisely because their claims were not product liability claims. And they had not pled them. In the four years that followed that decision before statute of limitations, they never sought to amend, seek additional discovery, add experts alleging product liability claims. The plaintiffs brought this exact theory to a jury in that intervening four years in the Caccomano case that was recently heard by this court and submitted jury instructions under Florida Pattern 401, which is the general negligence standard, not the negligence standard under 403 of Florida Pattern, which is product liability. And perhaps most damningly, in front of the district court, the plaintiffs do not even cite the accrual rule for product liability in their papers, much less argue that their claim is product liability. There are 46 additional undisputed statements of fact in their statement to the district court. Not one of them identifies a product. Not one of them identifies evidence that Pratt and Whitney was engaged in commerce related to that product. And not one of them identifies evidence that any of these plaintiffs were injured by such a product. It was only an oral argument in front of the district court that they created this theory for the first time. As I explain to the district court, I apologize, I'm over time. May I finish? As I explained to the district court, my client does sell products, but we sell jet and rocket engines. We do not sell or transport dirt. This was a soil remediation that the plaintiffs allege we engaged in negligently. A jury disagreed with them that anything ever reached the acreage in the first place, delivering a defense verdict on behalf of my client. But this is not a products liability case, and in 10 years it never has been.  First, I wanted to advise the court of the precedent that I was citing earlier. It's the Corcoran case. It is, in fact, a Price-Anderson case, which talks about whether to apply the federal dates of accrual and recognizes that the general rule is that that is done. However, the defendant in that case argued that since it's a Price-Anderson case, which deals with using the substantive law of the state, including the cause of action, that it really should be the state. And in that case, Corcoran decided, no, it doesn't really make a distinction here. Here, the most akin action that's pled is battery, so we're going to use the date of accrual for the most akin action that is pled. I wanted to speak for a minute to the defendant's assertion that all of the cases that use the manifestation doctrine are products cases, as though they are products cases in some way completely unakin to what is happening in this case. In this case, plaintiffs allege that they were harmed by the byproduct of the products created by the defendant. Eventually, those allegations and the discovery in those cases prove that how that happened was dirt came from the Pratt Whitney facility and was incorporated into their properties, and they were exposed to that. Those are two ways that this becomes a product case. Does that mean I guess I'm just thinking out loud, it's always dangerous, but does that mean that every environmental contamination case is fundamentally a product liability case? I mean, it seems like the contamination of soil always comes from some product, and so I guess now every contamination case is a product case. I think fundamentally if we strictly review the date of accrual rules such as the defendant is asking us to do and strictly review the definition of products liability that the court brought in under 768-8681 comparative fault statute, yes. Because it talks about the fact that a product claim is any claim asserting injury related to the fabrication of a product, not just the privity of sale of a product. But moreover, if we look at the cases where the manifestation doctrine was applied, these aren't cases where people bought products in every case. The John Mantel case was a person who installed insulation, and he was suing the various component manufacturers for the asbestos that was involved in the fiberglass. Let me ask you... He was working around, so this isn't you have to buy the product and be harmed by the product. You have to be harmed by a hazardous substance within a product that somebody else negligently manufactured, used, disseminated, whatever. Let me ask you this. Speaking only for myself, I sort of think that you do need to fit yourself into a product liability silo because for better or worse, equitable or inequitable, I think Florida's got a pretty strict accrual rule that has exceptions for certain kinds of claims, one of which is a product claim. So I think you've got to fit yourself into that. But then what do you do with the litany at the end of the previous presentation about sort of the dog that never barked? You didn't check the boxes. You didn't cite the statutes. You swore off product liability theories and related litigation. What do you do with that? That this is, you know, his contention, this is an eleventh hour Hail Mary. First, it is not eleventh hour because as the defendant points out, when they move to amend and add the defense, in some cases, seven years into litigation, we noted the fact that we would not seek to just amend the complaint to include a product's liability claim. It was that we would seek to amend to add parties to make the product's claim more apparent and to engage in further discovery on the products that Whitney was alleged to have misused. What was sort of the best evidence in the litigation record, so to speak, that you characterized this as a product liability claim from the outside? The fact that the defendant asked for a show cause order, that the jury finding on our fill product theory, where we allege that the defendant sold fill to the acreage, should stand in the shoes of any jury verdict in these cases. The defendant reached out and grabbed that verdict that incorporated ads published by Brad Whitney phone numbers for the sale of fill and said it should apply in these cases, and now it's saying it had no notice that these were products cases. Yeah, well, I mean, I guess not so much about its notice or what it might have thought the case was, but I'm talking about actually what the case was. Like, you're the master of your complaints and the box checking and everything. Like, what's the best evidence from you that you, in fact, pleaded product liability causes of action? Because we pled that all of these, that this contamination resulted from the defendant's operations, and the defendant is alleged to be in the business of manufacturing not only jet engines, but thoriated steel to line those engines. We allege that the defendant was engaged in the manufacture and research of uranium dioxide fuels. But so, I guess, and I've carried you over your time, I'm sorry, but I guess it really is then fundamentally the contention that every contamination case is likewise a product liability case. Yes, it is, Your Honor. That would be true, but I don't think we have to, we don't have to throw our lasso that large. I think we allege the products case, and I did want, I have 30 seconds left, and I did want to speak to Your Honor's contention that we have to fit into the products liability silo. What I noted in doing some of my research after the panel was appointed is that Your Honor's written opinions on continuing trespass cases, and we do believe that this fits into the continuing trespass silo of exceptions as well. There is not an environmental case that does not state that in the environmental context, where there is a continuing invasion of rights, that the statute does not begin to run until that wrongful invasion ceases. And throughout our complaint, we allege a continuing trespass. We allege a continuing trespass count. We allege a continuing harm. And none of that, the defendant's answer to our brief only says that we waived it. That is not true. Our argument, in fact, that we incorporated into our brief on the continuing tort exception was copy-pasted from my response to their motion for summary judgment. So it was not waived in any sense. The court, when it looked at the issues, noted that the defendant, because we had gone around this before, and they moved to lift the stay, had anticipated our continuing trespass argument, argued why we didn't get it, and then the court never assesses our continuing tort discussion. The only thing that happened that was different between our brief and our argument, and you can raise an issue that is preserved on appeal in our argument, was we noted that if you look at the Niemann case, the Price-Anderson-Niemann case, it talks about how if your state uses continuing trespass, that it is completely in line with the Price-Anderson principles, and that if you cannot ameliorate the harm, such as cancer, that is too bad. The policy of the statute of limitations defense is to keep the defendant from surprise attacks of claims that the claimant knew about. The policy of the statute of limitations defense is not to keep claimants from the courthouse on claims they never even knew about. And it is certainly not the policy of this court or any court to allow a defendant to raise a claim eight years later as a surprise, expressly because they're waiting to see what we would say in our expert interrogatories before they filed their one of 20 now Price-Anderson defenses, and then say that they are somehow surprised that this is a products claim when they ask for the court to drag in the verdict on the products aspect in another case and put it in this case. So again, we believe that this is a constitutional issue. There is no policy or legislation that trumps the constitution. We've provided the court with the federal and state cases. It says you have a constitutional right to access the courts. In the products cases that discuss that expressly, those products cases are no different than our case. Being exposed to contaminated fiberglass in somebody else's attic is no different than being exposed to tainted fill in your backyard. Thank you counsel. You've given us a great deal of help with this complex case. Thank you. And I meant that for both counsel. Just to be clear. Our next case is 23-2.